RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
RACHEL KORENBLAT
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Rachel_Korenblat@fd.org

Attorney for Justin Brown

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>JUSTIN BROWN,<br><br>       Defendant. | Case No. 2:17-cr-058-JCM-VCF<br><br>**REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR SUPPRESS EVIDENCE** |

<u>Certification</u>: This Reply is timely filed.

The defendant, Justin Brown, by and through his counsel of record, Rachel Korenblat, Assistant Federal Public Defender, hereby files this Reply to the Government's Response to his Motion to Dismiss or Suppress Evidence.

DATED this 14th day of July, 2017.

                                         RENE VALLADARES
                                         Federal Public Defender

                              By:   */s/ Rachel Korenblat*
                                         RACHEL KORENBLAT,
                                         Assistant Federal Public Defender
                                         Attorney for Justin Brown

**Reply Argument**

**I.   This Court Should Dismiss the Indictment due to the Officers' Due Process Violations**

The government relies on *Miller v. Vasquez*, 868 F.2d 1116, 1119 (9th Cir. 1989), which held that *California v. Trombetta*'s protections regarding destruction of exculpatory evidence does not extend to "'a duty to obtain evidence,'" to argue against dismissal. (ECF No. 45 at 3:8-13 (quoting *Miller*, 868 F.2d at 1119 (emphasis removed).))  Mr. Brown never argued that the Las Vegas Metropolitan Police Department ("LVMPD") officers' failure to record his arrest was exculpatory, but rather had the potential to be exculpatory. (ECF No. 36 at 5:19-6:11.) Mr. Brown's argument for dismissal is therefore grounded in *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), which extended *Trombetta* to situations when law enforcement lost potentially exculpatory evidence in bad faith.  In *Miller*, the opinion cited by the government, the Ninth Circuit declined to apply *Trombetta* to an officer's failure to collect evidence, but the Circuit nevertheless extended *Youngblood* to hold that "a bad faith failure to collect potentially exculpatory evidence would violate the due process clause." 868 F.2d at 1120.  The LVMPD officers failed to preserve potentially exculpatory evidence against departmental policy requiring them to do so, as shown below.  This was a result of intentionally, and improperly, manipulating their body cameras. The officers, therefore, acted in bad faith.

**A.   The Officers Failed to Abide by Las Vegas Metropolitan Police Department Policy**

LVMPD policy required the officers to record the entirety of their encounters with Mr. Brown.  According to the LVMPD policy obtained by the Federal Defender's Office, all officers hired after July 1, 2013 are required to wear body cameras and officers hired after that date may

2

voluntarily wear cameras. (Exhibit C, attached hereto (LVMPD Body Camera Policy).)[1] If the officer is required or chooses to wear a body camera, LVMPD policy mandates the officers activate the body worn camera ("BWC") "as soon as practical and safe" to record all vehicle stops, person stops, all dispatched calls for service, detentions, investigations pursuant to an arrest, arrests, suspect interviews, and any search of persons incident to arrest, among other events. (Ex. C at 5/210.01 at p. 2 (general procedures).)

On January 29, 2017, the officers responded to a dispatch call of a stopped stolen vehicle to investigate, detain and arrest individuals associated with that vehicle, Mr. Brown and a passenger, wherein they searched their belongings incident to their arrests according to Mr. Brown's LVMPD arrest report. (Ex. A, attached to moving motion, 14).) The officers could all safely turn on their BWCs either en route to the event or upon arrival to the event.

Pursuant to LVMPD protocol, after the officer activates the BWC, the officer must continue recording "until the event has concluded." (Ex. C at p. 3.) The LVMPD has several exceptions to this policy of continuous recording, which allow the officer to stop recording, either temporarily or permanently, under certain delineated circumstances. (*Id.*) The government may argue that the sixth reason allowed Officer Roberts, and others, to turn off their BWCs because they "determine[d] that the recording must be stopped, either temporarily or for the duration of the event, based on clearly articulable reasons (e.g. to discuss sensitive intelligence or investigative information)." (*Id.*)

An evidentiary hearing is necessary for the officers to clearly articulate why they turned off their BWCs and failed to capture the most critical parts of their event with Mr. Brown, such as his initial encounter, detention and search of his belongings. This issue is especially pressing for Officer Roberts, the officer who discovered the firearm while conducting a search incident

---

[1] An evidentiary hearing is necessary to determine whether this version of the policy was operative on January 29, 2017, the date of Mr. Brown's arrest.

to arrest. The government argues that Officer Roberts turned off his BWC because he was speaking with Officer Lebario, (ECF No. 45 at 4:17-5:2), but speaking to another officer, in of itself, is not a ground to turn off the BWC without a clearly articulable reason allowing him to do so. Furthermore, Officer Roberts failed to follow LVMPD protocol by announcing on the BWC why he was turning off the device. (Ex. C at 5/210.01 at p. 3.) And even if Officer Roberts has an articulable reason why his conversation with Officer Lebario allowed him to turn off his BWC, there is no justification for Officer Roberts's failure to turn back on his BWC after his conversation so that he could have captured his discovery of the firearm. Officer Roberts, as well as others, therefore unjustifiably failed to follow LVMPD policy.

If the government argues that merely failing to follow LVMPD policy should not lead to dismissal, or suppression, this Court may turn to the comparable context of inventory searches. For inventory searches, failure to comply with local police inventory procedure constitutes a Fourth Amendment violation, which therefore allows for suppression. *United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir. 1989) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 375 (1975)). Thus, the officers' failures to follow LVMPD protocol should have consequences.

### B. The Officers' Failure to Follow Policy was Material and Potentially Exculpatory

The government also disputes the materiality of the lack of recordings by arguing that the recordings only have a "mere possibility . . . that [the] undisclosed information might have helped defense." (ECF No. 45 at 3:23-4:9 (internal quotations and citation omitted).) The government's position is dubious. To counter Mr. Brown's suppression motion, the government makes several representations regarding Mr. Brown's interaction with the searched bag to argue the officer conducted a proper search incident to arrest. (ECF No. 21 at 4:16-21.) Specifically, in its response to the Motion to Suppress, the government claims it is material that Mr. Brown was "exercising control over [the bag] when the police showed up to investigate."

4

(*Id.* at 4:17-18.)  Furthermore, the government argues Mr. Brown "had immediate control of those bags, and even though he was placed in handcuffs, the bags were still potentially within his reach."[2]  (*Id.* at 4:18-20.)  The government is therefore arguing Mr. Brown's physical position with respect to his bag is material to defeat his Motion to Dismiss, but the officer's lack of recording of this interaction is immaterial for his Motion to Dismiss.  The government cannot have it both ways.  The failure to record is material and potentially exculpatory for both Mr. Brown's suppression motion and trial.

### C. The Officers' Failure to Follow Policy was Done in Bad Faith

The officers here acted in bad faith.  Regardless of the Nevada Revised Statute, which will require all officers to wear BWCs on July 1, 2018, (ECF No. 45 at 5:3-8), the LVMPD's internal procedures either mandated the officers utilize body cameras or provided the officers could voluntarily use the BWC.  But even if the officers' usage was voluntarily, they nevertheless had to follow LVMPD's procedures as to when they were required to turn off and on the device once the officer decided to wear the BWC.  Despite these clear policies, and presumably training, the officers here failed to abide by those polices for Mr. Brown.  Indeed, the government produced 15 clips from seven different officers.  (Ex. B, manual filing.)  *None* of those clips were from the start of the officers' encounter with Mr. Brown until the completion of the event.  And significantly, not a single officer captured Mr. Brown's initial encounter, his detention, the warrant check, his arrest or the supposed search incident to arrest.

This cannot be due to simple inadvertence by multiple officers because they were not "accustomed" to the devices, (ECF No. 45 at 5:12), which had been in use in the department for about at least three years before Mr. Brown's arrest.  (*See* Ex. C at p. 12 (noting initial date of LVMPD policy as 12/14).)  Furthermore, if compliance with police procedure can negate

---

[2] Mr. Brown disputes these representations.  (ECF No. 39 at 3:11-25.)

bad faith, *United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993), the converse should support bad faith when the lack of compliance is intentional.

### D. Mr. Brown Cannot Obtain Comparable Evidence from Other Sources

The government argues that Mr. Brown could obtain comparable evidence from J.C., a witness on the scene.[3] (ECF No. 45 at 3:19-4:15.) J.C., however, did not witness all of the events or apparently realize there was a firearm in the vehicle. Thus, he could not testify about Mr. Brown's location with respect to that firearm. Furthermore, it is doubtful the LVMPD allowed bystanders, especially a witness, close enough access to the crime scene to be able to precisely watch an inventory search, which occurred at nighttime.

Furthermore, even if J.C. was able to fully witnesses all of Mr. Brown's encounter with the LVMPD and Officer Roberts's inventory search, eye witnesses testimony, especially biased witness testimony, recounted nearly eight months after the event or later is in no way comparable or as reliable as the body camera recordings. Indeed, many studies have shown the unreliability of eye witness testimony. (*See* Hal Arkowitz and Scott Lilienfeild, Why Science Tells Us Not to Rely on Eyewitness Accounts, Scientific American, Jan. 1, 2010, located at https://www.scientificamerican.com/article/do-the-eyes-have-it/.)[4] The article explains, "[t]he act of remembering, says eminent memory researcher and psychologist Elizabeth F. Loftus of the University of California, Irvine, is 'more akin to putting puzzle pieces together than retrieving a video recording.'" (*Id.*) This Court could have, and should have, had the video recording. But the officers chose not to create it.

Thus, because the officers failed to preserve evidence by failing to record that evidence in bad faith and contrary to LVMPD policy, this Court should dismiss the Indictment.

---

[3] *Trombetta* required a showing regarding lack of comparable evidence, but it is unclear whether *Youngblood* requires the same.

[4] Last accessed July 14, 2017.

6

## II. If the Court Does Not Dismiss the Indictment, the Court Should Suppress the Firearm and Mr. Brown's Statements

This Court possesses remedies to sanction the officers' conduct short of finding a due process violation as well. *See United States v. Flyer*, 633 f.3d 911, 916 (9th Cir. 2011) ("If the government destroys evidence under circumstances that do not violate a defendant's constitutional rights, the court may still impose sanctions including suppression of secondary evidence.").

### A. The Court May Sanction the Government by Suppressing Evidence for the Officers' Failure to Properly use their BWCs

The government argues that because *Trombetta* does not create a duty to obtain evidence, *Flyer* does not do so either. (ECF No. 45 at 5:18-6:7.) In so arguing, the government overlooks *Miller*, the very case it cited initially, which extends due process protections when law enforcement fails to collect potentially exculpatory evidence in bad faith. Because the Ninth Circuit allows for a dismissal in such a circumstance, this Court can also sanction the government when warranted.

Suppression as a remedy is warranted here. If the Court fails to find the officers acted in bad faith, they surely acted negligently by failing to abide by LVMPD policy. And as shown above and in the moving motion, this lack of a contemporaneous record prejudiced Mr. Brown. The issue is not whether the government was ultimately going to find the firearm, but whether the government can demonstrate Mr. Brown possessed the firearm. The contemporaneous video could have potentially assisted in his defense at trial, but most certainly would have supported his suppression motion with respect to the officer's search incident to arrest.

### B. The Court is Not Limited to Suppressing "Secondary Evidence"

Furthermore, the Circuit's use of the term "secondary evidence" does not foreclose the relief requested here, as the government claims. (ECF No. 45 at 6:8-13.) In cases where evidence was destroyed, the defendant sought to suppress secondary evidence of illegal acts,

7

such as photographs or testimony because the primary original evidence (i.e., the firearm) was lost or destroyed. *See United States v. Lillard*, 929 F.2d 500, 504 (9th Cir. 1991) ("When primary evidence is destroyed and secondary evidence is used, the latter's admissibility at trial turns on a balancing test aimed at insuring a fair trial."). Thus, courts suppress, or refuse to suppress, "secondary evidence" simply because of the events that gave rise to the claim. And when successful, the suppression of secondary evidence would naturally cause a dismissal if the initial evidence was destroyed. Here, though the sanction would be suppressing the firearm and statements due to the officers' failures to properly create the evidence in the first place by utilizing their BWCs.

### C. The Court May Sanction the Government for Failing to Abide by Fed. R. Crim. P. 16(a)(1)(A)

Finally, this Court should sanction the government for failing to comply with Fed. R. Crim. P 16(a)(1)(A) because the officers' manipulation of the BWCs caused a gap in recording Mr. Brown's statement. Specifically, when the BWC is turned on, there is thirty seconds of video, but no audio. For example, on 170129-3414 P#5849 Pt 2 of 2, the video starts with Mr. Brown speaking but there is no audio until thirty seconds into the video. (Ex. B.) The officer failed to turn on his BWC before he started speaking to Mr. Brown in sufficient enough time to capture his entire statement. This manipulation therefore allowed the government to produce Mr. Brown's incomplete statement. As a remedy, this Court should suppress Mr. Brown's statements.

### **Conclusion**

For the above reasons and in the moving motion, Mr. Brown respectfully requests the Court dismiss his Indictment because the government violated his due process rights by failing to preserve critical evidence. Alternatively, this Court should suppress the firearm and Mr. Brown's statements due to the failure to preserve evidence.

DATED this 14th day of July, 2017.

Respectfully Submitted,

RENE VALLADARES
Federal Public Defender

By:    */s/ Rachel Korenblat*
RACHEL KORENBLAT,
Assistant Federal Public Defender
Attorney for Justin Brown

**Index of Exhibits**

| | |
|---|---|
| C | LVMPD Policy 5/210.01 Body Worn Cameras |

9

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on July 14, 2017, she served an electronic copy of the above and foregoing **REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR SUPPRESS EVIDENCE** by electronic service (ECF) to the person named below:

>STEVEN W. MYHRE
>Acting United States Attorney
>FRANK JOHAN COUMOU
>Assistant United States Attorney
>501 Las Vegas Blvd. South
>Suite 1100
>Las Vegas, NV 89101

>*/s/ Karen Meyer*
>Employee of the Federal Public Defender